**In the Matter of MARHOEFER PACK-ING COMPANY, INC., Bankrupt.**

**James L. TUOHY, Trustee in Bankruptcy, Plaintiff,**

v.

**R. M. KROGER, as Attorney-in-Fact for each of the 734 former employees of the Bankrupt who claim to be secured creditors herein, and the various parties listed on Exhibit "A" hereto, Defendants.**

**Bankruptcy No. IP78–10RA.**

United States Bankruptcy Court, S. D. Indiana, Indianapolis Division.

Feb. 1, 1979.

See also 7th Cir. 674 F.2d 1139.

James L. Tuohy, Indianapolis, Ind., trustee.

Hopper & Opperman, Dann, Pecar, Newman, Talesnick & Kleiman, Indianapolis, Ind., for trustee.

Bamberger & Feibleman, Indianapolis, Ind., for Robert Reiser & Co., Inc.

## FINDINGS OF FACTS, CONCLUSIONS OF LAW AND ENTRY

ROBERT L. BAYT, Bankruptcy Judge.

This cause having come on for trial before the Court on the 12th day of January, 1979, and the parties appearing by counsel, and the Court having heard the testimony and having examined the proofs offered by the respective parties, and the cause having been submitted to the Court for its decision, and after deliberating thereon and being fully advised in the premises, the Court finds the facts as follows:

### FINDINGS OF FACTS

1. In December of 1976, representatives of Robert Reiser & Company, Inc. (hereinafter "Reiser") and Marhoefer Packing Company, Inc. (hereinafter "Marhoefer"), commenced negotiations for the acquisition of one and possibly two Vemag stuffers.

2. The negotiations which commenced in December of 1976 resulted in the acquisition of two Vemag stuffers by Marhoefer; one was acquired pursuant to a conditional sale contract which was consummated on March 31, 1977, and one was acquired pursuant to a lease agreement entered into on February 28, 1977.

3. With respect to both Vemag stuffers, Marhoefer had been advised both verbally and in writing that the units could be acquired either by outright purchase, conditional sale contract, or lease.

4. On April 21, 1977, Reiser filed with the Indiana Secretary of State a financing statement with respect to the Vemag stuffer sold pursuant to the conditional sale contract dated March 31, 1977. Reiser did not file any financing statement with respect to the Vemag stuffer acquired by Marhoefer pursuant to the lease dated February 28, 1977.

5. The lease agreement entered into by Reiser and Marhoefer on February 28, 1977, provided for monthly lease payments in the amount of $665.00 over the lease term of 48 months. The last nine months lease payments, totalling $5,985.00, were payable upon execution of the lease agreement.

6. Paragraph 6 of the February 28, 1977, lease agreement provided, inter alia:

6. It is agreed that the equipment shall remain personal property of Robert Reiser & Company and retain its character as such no matter in what manner affixed or attached to the premises.

7. By correspondence dated February 28, 1977, Reiser added two option provisions to the lease agreement. These alternative options provided:

(a) At the conclusion of the four-year lease term, Marhoefer could purchase the stuffer for $9,968.00.

(b) At the conclusion of the four-year lease term, Marhoefer could exercise an option to renew the lease for an additional four years at an annual rate of $2,990.00 payable in advance. At the conclusion of the second four-year lease period, Marhoefer could purchase the stuffer for $1.00.

8. There was no express or implied provision in the lease agreement dated February 28, 1977, which gave Marhoefer any equity interest in the leased Vemag stuffer.

9. The purchase option price of $9,968.00 is thirty percent of the original list price of $33,225.00.

10. The thirty percent option price is based on Reiser's past records and experience and the belief that the amount represented a reasonable approximation of the fair market value of a four-year old Vemag stuffer.

11. George Vedie, for Reiser, and Kelley Strange, for the Trustee, testified that the useful life of the Vemag stuffer subject to the lease was more than four years.

12. For accounting and tax purposes, Reiser treats all leases as "operating leases" and not as "financial leases." The leased equipment is carried on the books as assets and depreciated. All rental payments are accounted for as income. Reiser utilizes the Investment Tax Credit and does not pass it on to the lessee.

13. Total lease payments during the four-year lease term amounted to $31,920.00, which is less than the original list price of the Vemag stuffer of $33,225.00.

14. Pursuant to the terms of the lease agreement dated February 28, 1977, Marhoefer, at the conclusion of the four-year lease term, had three alternatives: return the unit to Reiser, purchase the stuffer pursuant to the purchase option, or renew the lease for an additional four years.

15. Had Marhoefer wanted, Reiser would have sold the Vemag stuffer pursuant to a conditional sale contract rather than a lease; the terms of the conditional sale, based on a list price of $33,225.00, would have been $7,225.00 down, with monthly installment payments over a 24-month period in the amount of $1,224.00. The carrying charge for the amount financed would have been 6½%.

## CONCLUSIONS OF LAW

Upon these facts the Court now Concludes:

1. The Court has jurisdiction over the parties and subject matter of this litigation.

2. Pursuant to stipulation of the parties filed with the Court on January 12, 1979, the applicable law to govern the resolution of this dispute is Indiana Law.

3. The parties to the February 28, 1977 lease agreement were not attempting to disguise a sale as a lease, and the conduct of both parties establish that the February 28, 1977 lease agreement was intended to be a true lease.

4. The presence of the option to renew the lease for an additional four years and to acquire the Vemag stuffer at the conclusion of the second four-year term by the payment of $1.00 did not, in and of itself, make the lease one intended as security.

5. The purchase option price of $9,968.00, which is thirty percent of the original list price of the Vemag stuffer, is not nominal consideration.

6. Marhoefer, pursuant to the terms of the lease agreement dated February 28, 1977, was under no legal obligation or economic compulsion to exercise any particular alternative to the exclusion of others. The monthly lease payments during the four-year lease term were not excessive and did not fully reimburse Reiser for the original list price of the Vemag stuffer.

7. A review of all the facts and circumstances surrounding the execution of the lease agreement on February 28, 1977, establish that the parties intended the agreement to be a true lease and not a lease intended as security; consequently, Robert Reiser is entitled to have its prayer for relief granted and that the possession of the Vemag stuffer, acquired by Marhoefer pursuant to the lease agreement dated February 28, 1977, and which is currently in the possession of the Trustee, should be turned over to Robert Reiser.